**ILLINOIS CENTRAL RAILROAD COMPANY, Plaintiff-Appellant,**

v.

**BROTHERHOOD OF LOCOMOTIVE ENGINEERS et al., Defendants-Appellees.**

**No. 17712.**

United States Court of Appeals, Seventh Circuit.

Feb. 5, 1970.

---

Francis M. Shea, Ralph J. Moore, Jr., James A. Wilcox, Washington, D. C., Robert Mitten, John W. Foster, Martin W. Fingerhut, Chicago, Ill., for plaintiff-appellant; Shea & Gardner, Washington, D. C., of counsel.

Burke Williamson, Jack A. Williamson, Chicago, Ill., for defendants-appellees; Adams, Williamson & Turney, Chicago, Ill., of counsel.

Before DUFFY, Senior Circuit Judge, and KILEY and KERNER, Circuit Judges.

KILEY, Circuit Judge.

Plaintiff Illinois Central Railraod Company (IC) has appealed from a judgment enjoining it from continuing an apprentice locomotive engineer program, pending exhaustion of major dispute administrative procedures with respect to defendant Brotherhood of Locomotive Engineers' (Brotherhood) notice under Section 6 of the Railway Labor Act.[1] We affirm.

The IC and the Brotherhood have had collective bargaining agreements since 1944. They had, until April, 1968, co-operated in the practice of conducting an apprentice locomotive engineer program. At that time the IC notified[2] the Brotherhood of its intention to inaugurate a Strike Program for training administrative and supervisory personnel in the operation of locomotive engines for limited purposes, in event of engineer strikes. The Brotherhood responded that it would object to, and take appropriate action against, any impingement on duties and obligations of engineers. In late April or early May the Brotherhood learned the Strike Program had begun. Protesting without success, on June 3, 1968 the Brotherhood filed its formal Section 6 notice. Conferences required by Section 6 did not settle the dispute. Neither party requested intervention of the Mediation Board, and the Brotherhood scheduled a strike for July 23.

The Mediation Board thereupon found an emergency existed, requested maintenance of the status quo, docketed the case[3] and requested the Brotherhood to

---

1. 45 U.S.C. § 156 provides:

Carriers and representatives of the employees shall give at least thirty days' written notice of an intended change in agreements affecting rates of pay, rules, or working conditions, and the time and place for the beginning of conference between the representatives of the parties interested in such intended changes shall be agreed upon within ten days after the receipt of said notice, and said time shall be within the thirty days provided in the notice. In every case where such notice of intended change has been given, or conferences are being held with reference thereto, or the services of the Mediation Board have been requested by either party, or said Board has proffered its services, rates of pay, rules, or working conditions shall not be altered by the carrier until the controversy has been finally acted upon, as required by section 155 of this title, by the Mediation Board, unless a period of ten days has elapsed after termination of conferences without request for or proffer of the services of the Mediation Board.

2. This was not treated as a Section 6 notice by the parties.

3. The case is pending and undisposed of by the Board.

defer the strike. The parties agreed to maintain the status quo during July 23 and 24. The IC filed this suit on the 24th to enjoin the strike.

The district court denied a preliminary injunction and, after a trial on the merits,[4] decided that the IC Strike Program, instituted by IC, was a change in "rates of pay, rules, or working conditions or established practices" in effect when the dispute arose; and that by conducting the program during June and July, the IC violated Section 5 of the Act,[5] and was precluded from injunctive relief. The court said that both parties were bound by the status quo provisions of Section 5 of the Railway Labor Act until the Board's decision is made or until thirty days after the Board notifies the parties, as provided in Section 6, of the failure of its efforts.

The Brotherhood's Section 6 notice stated that its purpose was to specify who would man IC's locomotives and to state positively that the engineers would not be subject to discipline for refusing to relinquish control of locomotives in their charge. The positive statement expresses the variation in the Strike Program from the prior cooperative apprentice program. The court found that— unlike the earlier practice—under the Strike Program IC supervisory engineers and administrative personnel rode in the engineer's cab, required the engineer to relinquish his position at the controls and to turn over operation of the locomotive to the apprentice, and threatened discharge should engineers leave the train. The court found this to be a change in working conditions giving rise to a major dispute calling for Mediation Board procedures.[6]

The IC concedes that the Supreme Court decision in Detroit and T. Shore Line R. R. v. United Transportation Union, *supra*, vitiates its contention that the Railway Labor Act prohibits only changes in conditions prescribed in the bargaining agreement. The Court there held that the Section 6 status quo provision preserved the "actual objective working conditions out of which the dispute arose" whether or not the bargaining agreement covered the conditions.

■ The IC contends that it did not violate the Act's status quo provisions because its Strike Program was put into effect before the Section 6 notice was served, and before the Mediation Board's decision or thirty days following its notice of failure of efforts. We agree with the district court that the IC's contention too narrowly interprets the Sections 5 and 6 status quo provisions. The general purposes of the Act, expressed in Section 1a,[7] to avoid interruptions and

---

4. By agreement there was not a strike nor a continuation of the Strike Program during the trial.

5. 45 U.S.C. § 155 provides in part:
   If arbitration at the request of the Board shall be refused by one or both parties, the Board shall at once notify both parties in writing that its mediatory efforts have failed and for thirty days thereafter, unless in the intervening period the parties agree to arbitration, or an emergency board shall be created under section 160 of this title, no change shall be made in the rates of pay, rules, or working conditions or established practices in effect prior to the time the dispute arose.

6. "A 'major dispute' is one arising out of the formation or change of collective agreements covering rates of pay, rules, or working conditions." "A 'minor dispute'

* * * [is] a dispute arising out of the interpretation or application of collective agreements." Detroit and T. Shore Line R. R. v. United Transportation Union, 396 U.S. 142, 90 S.Ct. 294, 24 L.Ed.2d 325 (Dec. 9, 1969).

7. 45 U.S.C. § 151a provides:
   The purposes of the chapter are: (1) To avoid any interruption to commerce or to the operation of any carrier engaged therein; (2) to forbid any limitation upon freedom of association among employees or any denial, as a condition of employment or otherwise, of the right of employees to join a labor organization; (3) to provide for the complete independence of carriers and of employees in the matter of self-organization to carry out the purposes of this chapter; (4) to provide for the prompt and orderly settlement of all disputes concerning rates

achieve prompt and orderly settlement of disputes about working conditions, implicitly support the district court's broad view that the dispute before us arose when the Brotherhood responded to the IC notification with a caution that it would tolerate no change in the engineers' duties or obligations. Accepting the IC contention would enable either party to change existing conditions of work unilaterally and stake its status quo claim at the point gained by unilateral action. Clearly this would offend the harmonious purposes of the Act.[8]

■ We see no merit in IC's contention that the Brotherhood Section 6 notice is invalid because it seeks "veto power" over IC's traditional right to train personnel needed in the public interest. It relies upon a general rule stated in this court's decision in Chicago & N. W. Ry. v. Order of R. R. Telegraphers,[9] 264 F.2d 254, 258 (1959), to the effect that if a union demand does not fall within the scope of mandatory bargaining, a resultant strike may be enjoined. That rule has no effect here because the dispute before us is a major dispute, clearly within the scope of mandatory bargaining.

■ We see no merit in IC's claim that it cannot perform its public service obligation unless it is enabled to train engineers under its Strike Program. We fail to see how its service to the public can be degraded or frustrated by compliance with the Act.

■ Finally, the IC contends the Brotherhood Section 6 notice is not bargainable until the Mediation Board determines a representation dispute between the Brotherhood and the Brotherhood of Locomotive Firemen and Engineers [10] as to which has the right to represent apprentice engineers as bargaining agent.

■ The dispute between the IC and the Brotherhood before us does not involve the question of whether the Brotherhood shall represent the apprentice engineers. Our question is whether the IC can unilaterally change an actual working condition. The Brotherhood in this question is not attempting to gain representation of the firemen. We think that the district court did not err in deciding that the respective Brotherhood's representation proceedings before the Board were not involved in the instant dispute.

We hold the district court did not err in denying the injunctive relief sought.

The judgment is affirmed.

---

of pay, rules, or working conditions; (5) to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions.

8. The Supreme Court in *Shore Line* stated:

   While the quoted language in §§ 5, 6, and 10 is not identical in each case, we believe that these provisions, together with § 2 First, form an integrated, harmonious scheme for preserving the status quo from the beginning of the major dispute through the final 30-day "cooling-off period." * * * The obligation of both parties during a period in which any of these status quo provisions is properly invoked is to preserve and maintain unchanged those actual, objective working conditions and practices, broadly conceived, which were in effect prior to the time the pending dispute arose and which are involved in or related to that dispute.
   38 U.S.L.Week at 4036 (U.S. Dec. 9, 1969).

9. The Supreme Court subsequently reversed this court's decision in *Telegraphers* that a union demand, that positions held as of December 3, 1957, should not be abolished except by agreement, was not within the scope of mandatory bargaining. 362 U.S. 330, 80 S.Ct. 761, 4 L.Ed. 2d 774 (1960).

10. The Brotherhood of Locomotive Firemen and Engineers, representing "firemen and helpers," served a Section 6 notice November 15, 1954, proposing that it and the IC establish a program for training, engineer apprentices. That notice is still pending and undisposed of. There is also pending before the Mediation Board a Section 6 notice served by the defendant Brotherhood March 20, 1968, seeking to establish an apprentice program under IC and defendant Brotherhood.